UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CLEAN WATERS, a non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>Aircraft X-Ray Laboratories, Inc., a California corporation,<br><br>    Defendant. | Case No.: CV 17-8500-DMG (RAOx)<br><br>**CONSENT DECREE [19]** |

## **CONSENT DECREE**

This Consent Decree ("Consent Decree") is entered into between Our Clean Waters ("OCW") and Aircraft X-Ray Laboratories, Inc. ("AXL") (all parties collectively are referred to as the "SETTLING PARTIES") with respect to the following facts and objectives:

## **RECITALS**

**WHEREAS**, OCW is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to working with communities to improve the social and natural environment.

**WHEREAS**, AXL owns and operates a facility located at 5216 Pacific Blvd, Huntington Park, CA 90255 (the "Facility"). Through June 30, 2015, the Facility

has operated pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities. Beginning on July 1, 2015, the Facility has operated pursuant to State Water Resources Control Board Water Quality Order No. 2014-0057-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001 (hereinafter "General Permit"). A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on or about July 24, 2017, OCW provided AXL with a Notice of Violations and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, OCW filed its Complaint in the United States District Court for the Central District of California (Our Clean Waters v. Aircraft X-RAY Laboratories, Inc., a California corporation Case No. 2:17-cv-08500, on November 21, 2017;

**WHEREAS**, AXL denies any and all of OCW's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, OCW and AXL, through their authorized representatives and without either adjudication of OCW's claims or admission by AXL of any alleged violation or other wrongdoing, have chosen to resolve in full OCW's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, OCW and AXL have agreed that it is in their mutual interest to enter into this Consent Decree setting forth the terms and conditions appropriate to resolving OCW's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE**, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND IS HEREBY ORDERED AND DECREED BY THIS COURT AS FOLLOWS:

1. **Jurisdiction.** This Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. §135(a);

2. **Venue.** Venue is proper in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. §1365(c)(1) because the AXL facility is located within this District;

3. **Effective Date.** The term "Effective Date," as used in this Consent Decree, shall mean the date that this Consent Decree is approved by the Court.

4. **Termination Date**. The term "Termination Date" as used in this Consent Decree, shall mean June 30, 2019.

5. **Stipulation to Dismiss and [Proposed] Order.** Within ten (10) calendar days of the Court executing this Agreement, OCW shall file a Stipulation to Dismiss thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Central District of California ("District Court"), with this Consent Decree attached and incorporated by reference, specifying that OCW is dismissing with prejudice all claims in OCW's Complaint.

## **COMMITMENTS OF AXL**

6. **Compliance with General Permit.** AXL agrees to operate the Facility in compliance with the applicable requirements of the General Permit and the Clean Water Act.

7. **Implemented Storm Water Controls**. AXL shall maintain in good working order all storm water collection systems at the Facility currently installed or to be installed pursuant to this Consent Decree, including but not limited to, existing housekeeping measures.

8. **Additional Structural Best Management Practices.** By the Effective Date, AXL shall implement the following structural best management practices ("BMPs") to improve the storm water pollution prevention measures at the Facility:

(a) Assure that the sections of the Facility identified on Exhibit A, exclusive of indentified landscaped areas, have been paved with asphalt in a sufficient manner to allow for the cleaning of the surface;

(b) Assure that all forklifts maintained by the company at the Facility have, to the extent reasonably practical and available, low-zinc tires (i.e. tires with less than 2.1% zinc) as represented by the tire dealer or manufacturer of the tires;

(c) Maintain at least 12 each, 4" x 72" weighted zeolite (or comparable material) wattles at the facility and distribute them in the flow paths of storm water run-off prior to oncoming storms.

9. **Confirmation of New Structural BMPs**. Within 30 days of the Effective Date, AXL shall confirm to OCW the installation of the measures described above in Paragraph 8.

10. **Monitoring of Storm Water Discharges.** AXL shall collect and analyze storm water discharges from the Facility in accordance with the General Permit and this Consent Decree for, at a minimum, pH, total suspended solids, oil and grease, nitrate + nitrite as nitrogen, and zinc.

11. **Monitoring Results.** Results from the Facility's sampling and analysis during the term of this Consent Decree shall be uploaded to the State Water Resources Control Board's ("State Board") Storm Water Multiple Application and

Report Tracking System ("SMARTS") in accordance with the requirements of the General Permit.

12. **Additional Measures.** If the Facility's storm water sampling results during the 2017-2018 and/or 2018-2019 reporting years indicate that the average of the analytical results for a particular parameter indicates that storm water discharges from the Facility exceed the annual NALs (as set forth in the General Permit) or if two or more analytical results from samples taken for any parameter within the 2017-2018 or 2018-2019 reporting years exceed the instantaneous maximum NAL, AXL agrees to take responsive actions to improve its storm water management practices to address exceedances of the NAL attributable to its industrial sources, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs aimed at reducing levels observed in storm water samples.

13. **Amendment of Storm Water Pollution Prevention Plan ("SWPPP").** By sixty (60) days after the Effective Date, AXL shall have amended the Facility's SWPPP to incorporate all changes, improvements, sample log forms, and best management practices set forth in paragraph 8 of this Consent Decree. AXL shall ensure that all maps, tables, and text comply with the requirements of the General Permit. AXL shall ensure that the SWPPP describes all structural and non-structural BMPs and details the measures to be installed.

14. **Reimbursement for Fees, Costs, and Expenses.** In recognition of the good faith efforts by AXL to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by AXL of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to AXL, the SETTLING PARTIES agree that AXL will pay the sum of $40,000.00 to OCW for reimbursement of all administrative, out of pocket, consulting, filing

and legal and expert fees.  In addition such payment will provide reimbursement to OCW for monitoring AXL's operations during the duration listed in this Consent Decree, as described as the Termination Date.  Payment shall be mailed to Levitt Law, APC – Client Trust, as follows:  311 Main Street, #8, Seal Beach, CA 90740.  Payment shall be made by AXL to OCW within five (5) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this Consent Decree.  AXL shall copy OCW with any correspondence.

15. **Mitigation Payment.**  In recognition of the good faith efforts by AXL to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by AXL of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to AXL, the SETTLING PARTIES agree that AXL will pay the sum of $10,000.00 to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing environmentally beneficial projects relating to water quality improvements in the Los Angeles River Reach 2  watershed.  Payment shall be mailed to:  Rose Foundation, 1970 Broadway, #600, Oakland, CA 94612-2218, Attn: Tim Little, Executive Director.  (The Rose Foundation is a tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code. Our Tax ID number is 94-3179772. Donations to the Rose Foundation are tax-deductible as allowed by law).  Payment shall be made by AXL to the Rose Foundation within five (5) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this Consent Decree.  AXL shall copy OCW with any correspondence and check copy.

16. **Review by Federal Agencies.**  OCW shall submit this Consent Decree to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") within five (5) days after the lodging of this Consent Decree with this Court for

review consistent with 40 C.F.R. § 135.5. The Agencies' review period expires forty-five (45) days after receipt of the Consent Decree by both Agencies, as evidenced by the return receipts and the confirming correspondence of DOJ. In the event that the Agencies comment negatively on the provisions of this Consent Decree, OCW and AXL agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies. If OCW and AXL are unable to resolve any issue(s) raised by the Agencies in their comments, OCW and AXL agree to expeditiously seek a settlement conference with the Magistrate Judge assigned to this matter to resolve the issue(s). If the SETTLING PARTIES cannot resolve the issue(s) through a settlement conference, this Consent Decree shall be null and void. The date of (a) the Agencies' unconditional approval of this Consent Decree, (b) the expiration of the Agencies' review period, or (c) the SETTLING PARTIES' resolution of all issues raised by the Agencies, whichever is earliest, shall be defined as the "Agency Approval Date."

17. **No Admission or Finding**. Neither this Consent Decree nor any payment pursuant to the Consent Decree nor compliance with this Consent Decree shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. However, this Consent Decree may constitute evidence in actions seeking compliance with this Consent Decree. Evidence of the payment amount may be used to enforce the payment provisions of this Consent Decree.

18. **Mutual Release of Liability and Covenant Not to Sue.** In consideration of the above, and except as otherwise provided by this Consent Decree, the SETTLING PARTIES hereby fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns,

and current and former employees, attorneys, officers, directors, members, shareholders, and agents from any and all claims and demands of any kind, nature, or description whatsoever, known and unknown, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which it may presently have, or which may later accrue or be acquired by it, arising from the Complaint or Notice Letters, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in the Complaint or Notice Letters, for the alleged failure of Defendant to comply with the Clean Water Act at the Facility, up to and including the Termination Date.

19. **1542 Acknowledgment**. The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint at the Facility up to and including the Termination Date of this Consent Decree.

20. **No Further Actions.** For the period beginning on the Effective Date and ending on the Termination Date, neither OCW, nor its officers, executive staff, members of its Steering Committee or counsel will bring any enforcement action or pursue or take any action with respect to any statutory or common law claim, to the

full extent that any of the foregoing were or could have been asserted by OCW against AXL or the RELEASEES (as defined in paragraph 21, below) in the Complaint, the Notice, or covered by this AGREEMENT, except as provided for in this AGREEMENT, nor will they file or support other lawsuits, by contacting, providing financial assistance or personnel time or taking any other affirmative actions, against or relating to the Facility by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act or any other statutory or common law claim, to challenge the Facility's compliance with the Clean Water Act, or the General Permit.

21. **Releases.** This AGREEMENT is a final and binding resolution between Plaintiff, on his own behalf, and on behalf of the public and in the public interest, and AXL, and each of their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors, members, shareholders, and agents ("RELEASEES") regarding the matters addressed in this AGREEMENT and shall have preclusive effect such that no other person or entity, whether purporting to act in his, her or its interests or the public interest shall be permitted to pursue and/or take action with respect to any violation of the CWA that was alleged in the Complaint, that could have been brought pursuant to the Notice or that is addressed by this AGREEMENT.

22. **Dispute Resolution Procedures.** Except as specifically noted herein, any disputes with respect to any of the provisions of this Consent Decree shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer in good faith to resolve any dispute arising under this Consent Decree. In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting

before the Magistrate Judge assigned to this action. In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the dispute via motion to the District Court.

## **GENERAL PROVISIONS**

23. **Force Majeure.** AXL will notify OCW if timely implementation of AXL's respective duties under this Consent Decree becomes impossible due to circumstances beyond the control of AXL or its agents, and which could not have been reasonably foreseen and prevented by the AXL's exercise of due diligence. Any delays due to AXL's respective failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree will not, in any event, be considered to be circumstances beyond the AXL's control.

    (a) If AXL claims impossibility, it will notify OCW in writing within twenty (20) business days of the date that AXL discovers the event or circumstance that caused or would cause non-performance with the terms of this Consent Decree. The notice must describe the reason for the non-performance and specifically refer to this section of this Consent Decree. The notice must describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by AXL to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. AXL will adopt all reasonable measures to avoid and minimize such non-performance.

    (b) The SETTLING PARTIES will meet and confer in good faith concerning the non-performance and, if the SETTLING PARTIES concur that performance was or is impossible, despite the timely good faith efforts of AXL, due

to circumstances beyond the control of AXL that could not have been reasonably foreseen and prevented by the exercise of due diligence by AXL, new performance deadlines will be established.

(c) If OCW disagrees with AXL's notice, or in the event that the SETTLING PARTIES cannot timely agree on the terms of new performance deadlines or requirements, either SETTLING PARTY may invoke the dispute resolution process described in Paragraph 22 of this Consent Decree. In such proceeding, AXL will bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

24. **Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, and the Clean Water Act or specifically herein.

25. **Choice of Law**. This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

26. **Severability**. In the event that any provision, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

27. **Correspondence**. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular, certified, overnight mail, or e-mail as follows:

| If to OCW: | Copy to:<br>Scott L. Levitt, Esq.<br>LEVITT LAW, APC<br>311 Main Street, Suite #8<br>Seal Beach, CA  90740 |
|---|---|

|   |   |   |
|---|---|---|
| 1 |  | (562) 493-7548 |
| 2 | If to AXL:<br>James Newton | Copy to:<br>Charles H. Pomeroy<br>cpomeroy@stilespomeroy.com<br>StilesPomeroy LLP<br>790 E. Green Street<br>Pasadena, CA 91101<br>(626) 243-5599 |
|   | 5216 Pacific Blvd.<br>Huntington Park, CA 90255 |   |

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

28. **Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

29. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

30. **Modification of the Agreement**. This Consent Decree, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

31. **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

32. **Integration Clause.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the

agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this Consent Decree.

33. **Authority.** The undersigned representatives for OCW and AXL each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

34. **Continuing Jurisdiction**. This Court shall retain jurisdiction to enforce the terms of the Consent Decree.

**IT IS SO ORDERED.**

DATED: February 12, 2018

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

# METAL FINISHING ASSOCIATION OF SOUTHERN CALIFORNIA
# COMPLIANCE GROUP
# SITE MAP
**Page 1 of 2**

| BUSINESS NAME | Aircraft X-Ray Laboratories, Inc. | | |
|---|---|---|---|
| SITE ADDRESS | 5216 Pacific Blvd. | CITY Huntington Park | ZIP CODE 90255 |
| DATE MAP DRAWN 10/20/2017 | MAP # 1 | FACILITY WDID # | 4 19I016489 |



MCT Form SM 5/1/15 Rev.

# METAL FINISHING ASSOCIATION OF SOUTHERN CALIFORNIA
# COMPLIANCE GROUP
## *SITE MAP LOCATOR*
**Page 2 of 2**

| BUSINESS NAME: | Aircraft X-Ray Laboratories, Inc. |
|---|---|

| SITE MAP INFORMATION | N/A | MAP ID |
|---|:---:|:---:|
| **FACILITIES BOUNDARIES** |  | 1 |
| **DRAINAGE AREAS** |  | 2 |
| **DIRECTION OF STORM WATER FLOW** |  | 3 |
| **AREAS IMPACTED BY DISCHARGES FROM SURROUNDING AREAS** | ✓ | 4 |
| **ON-SITE WATER BODIES** | ✓ | 5 |
| **AREAS OF SOIL EROSION** | ✓ | 6 |
| **NEARBY WATER BODIES** | ✓ | 7 |
| **MUNICIPAL STORM DRAIN INLETS** |  | 8 |
| **POINTS OF DISCHARGE** |  | 9 |
| **STRUCTURAL CONTROL MEASURES** | ✓ | 10 |
| **NON-IMPERVIOUS AREAS** | ✓ | 11 |
| **LOCATIONS WHERE MATERIALS MAY BE DIRECTLY EXPOSED TO PRECIPITATION** (ONLY DURING SHIPPING/RECEIVING) |  | 12 |
| **SIGNIFICANT SPILLS & LEAKS AREAS** | ✓ | 13 |
| **MATERIAL STORAGE AREAS / TANKS** |  | 14 |
| **SHIPPING & RECEIVING AREAS** |  | 15 |
| **FUELING AREAS** | ✓ | 16 |
| **VEHICLE & EQUIPMENT STORAGE/MAINTENANCE AREAS** |  | 17 |
| **MATERIAL HANDLING AND PROCESSING AREAS** |  | 18 |
| **AREAS OF INDUSTRIAL ACTIVITY DIRECTLY EXPOSED TO PRECIPITATION** | ✓ | 19 |
| **WASTE TREATMENT AND DISPOSAL AREAS** |  | 20 |
| **DUST/PARTICULATE GENERATION AREAS** |  | 21 |
| **AUTHORIZED NON-STORM WATER DISCHARGES** | ✓ | 22 |
| **NON-AUTHORIZED NON-STORM WATER DISCHARGES** | ✓ | 23 |
| **OTHER AREAS OF INDUSTRIAL ACTIVITIES** | ✓ | 24 |
| **STORMWATER DISCHARGE COLLECTION POINT** |  | 25 |
| **HOUSEKEEPING AREAS** |  | 26 |